Petro Harvester v. David Keith Mr. Caves. My name is Terry Caves. I represent David Terry Keith. This case involves a surface lease contract that was entered into by the keys with Coho Resources who was a mineral lessee and the operator in 1988. In 2003 it was amended by the operator mineral lessee at that time which was Denberry with the keys. Paragraph eight of this service lease contract is the paragraph that's an issue in this case and that paragraph states that at the end of the lease term the current mineral lessee and operator which is Petro Operating and Petro Laurel Holdings shall restore the premises to the condition it was in in 1988 before the commencement of the lease. The district court held that a mineral lessee cannot bargain away or limit its surface easement rights under the mineral estate by executing a surface contract. That decision is wrong and I want to explain why it's wrong. First of all this court and in the Mobile Oil Corporation versus Brennan said that a mineral lessee by express language can limit its rights but when these contracts are enforced there's three conditions that are present and you can look at all the cases were cited. These three conditions have to be present for the contract to be enforceable. One, you have to have the mineral lessee and the operator and the surface owner sign the contract. That's what we have in the Keith case. That's what we have. All three signed it. Number two, the surface owner, this is critical, the surface owner has to give up something more than just give it access to the property because the mineral lessee has the right under the mineral lease to come on the property. So the the surface owner has to give up something more. I'll go into that detail. The Keith's did that. The Reynolds case, they didn't do that. There was a consideration. No. There was consideration. In this case, they limited the loan amount. They did. They did. The third requirement is that there has to be express limitations in the contract that requires the mineral lessee to do something at the end of the lease term because a lot of these cases there was no express language. So what we have in the Reynolds case, they cite the district court relied on Reynolds v. Amarato Hess and EOG Resources versus Turner. In this case that we have here is distinguishable from that for these reasons. In the Reynolds case, the mineral lessee did not sign the contract. The operator did not. Trans State was acting on behalf of Exxon in that case. And the trial court framed the question correctly. The trial court said, was there authority by Trans State, the operator, to impair the mineral lessee Exxon's rights? And the trial court answered, no, they couldn't. They didn't have authority to do that. The Supreme Court of Mississippi found the same thing in I went to a lot of trouble to get the actual lease in Reynolds as part of the record. The Reynolds surface lease, they gave up no rights in that surface lease other than access. So in Reynolds, it failed for two reasons. The mineral lessee didn't sign and they didn't give up anything. So the express language that you're relying on is just that paragraph 8 language you just read? Yes, your honor. So what what rights does that give away? They have to remove their All you read was I want to make sure I've understood your argument. You said paragraph eight requires uh Petro to return the premises to the preexisting condition. That's correct. That's the language in total. There's nothing else you're relying on. That's the express language we're relying on right there. It requires them to move their equipment off the property restored. No, please. No, I know you were asking. It doesn't say remove. It just says return to the preexisting condition. That's right. Which there was nothing on the property in 1980. Why isn't the preexisting condition that all the rights that they would have under the mineral lease? How is this subtracting from the mineral lease rights? Well, they're going to have to move their equipment off of the Keith property and put it somewhere else to conduct their operations. They don't have the right to do that on the mineral lease. They don't, not with this surface lease that modified it because the mineral is do they have the right to have that equipment there without the surface just with the mineral lease? They would without the surface lease involved. Why does this language that you're relying on take anything away from the mineral lease? To me, this just says go back to whatever you had under the mineral lease. No, sir, I disagree with that. It says return the premises, the premises to the same or similar condition it was in at the commencement of the lease. It talks about the property and was the mineral lease in effect at the commencement of the lease of the service. It was, but there was a mineral lease kick in. It wouldn't because the mineral SC agreed and the operator agreed that at the end of the lease term, the surface lease contract, we're gonna return your property, Mr Keith, Miss Keith, this property here to the same condition it was in before we came on the property. That I read here of to refer to 1988. You have to return it to the condition it was in in 1988. Yes, your honor. Absolutely. But is the point is the thing that once 30 years is expired, they actually under the original lease, they can put the same equipment back up again. So is your interpretation of this that they've got to take it down, but then the next day they can put it back. They can't do that. They can't put it back. They agreed to put it back in the same condition. If they put it back in the same condition, can they come back on the property again? Well, they have an underlying mineral lease. Yes, but I don't think that that has any bearing when they agreed to. Okay, so you're actually making an argument. I thought that it's broader, but it runs more squarely into Reynolds because you really are saying the surface lease has nullified the mineral lease. But no, it hasn't. It can coexist. The mineral lessee has the right to go conduct their operations over this entire 1083 acres of property. But on the keys four acres, can they put back up their pumps and well, no, that would to me say it's superseding or nullifying on that 4.3 acres. They can put it next door on somebody else's property. So under the mineral lease before the surface lease, they had a certain bundle of rights. Yes. Okay. Is it your point that you have the surface lease and then the surface lease expires? We don't just go back to what they had under their middle lease. They have fewer rights after the surface than before. As to that 4.3 acres, they do. You're right. Contracted to do that. And that's based on language about returning the premises to the previous condition? Yes, Your Honor. But if Petro had never gotten the mineral lease, because it didn't sign it originally, they got it through assignments. They did. All right. If they had not gotten the assignment and only had the surface, then the mineral lessee would not have to move anything at the termination of Petro's surface. Petro didn't have the assignment. They wouldn't have the minerals and they wouldn't have any right to be out there anyway. Right. But the other mineral owner would, the mineral lessee. Suppose S had had the contract and Petro just had the surface. There could be no cancellation when the surface lease went out. Petro couldn't have the surface without the mineral lease. They couldn't come on the surface of the property, wouldn't have any rights without the mineral lease. They could have leased it to a farmer. Well, they could use that property for any purpose according to that contract, surface contract. It was broad. I mean, Keese gave up a lot for that paragraph eight. And now when it's time for paragraph eight to be enforced, Petro doesn't want to do it. You have to read that section eight. Premises, I would think, would naturally refer to buildings or houses as distinct from the overall four acres. I mean, I guess I'm trying to get back 30 years to figure out what was going through their mind. It seems to me they weren't trying to utterly nullify a mineral lease. No. So instead what it seems like they were concerned about were pre-existing buildings and structures, just as there was a separate section relating to the house that's been demolished. So in section eight, when they say return the premises, why wouldn't premises be given its natural legal meaning that it refers to buildings and structures, not the pumps and the wells? My understanding of premises is the land and whatever's on the land. That's your understanding? That's the premises. Mississippi law, real estate law in Mississippi. The premises is the land and improvements located on the land. So your view of this is when Coho negotiated the surface lease in 1988, they knew they were actually negating their ability to ever get oil out of the Keith's four acres. Well, they can get oil out from under the 4.3 acres. They just can't do it on the 4.3 acres. Can't use this land at all. Yes, they knew when they signed the contract in 1988 that that could happen if this lease was not renewed. Is our mobile oil case for that? Mobile oil. Parker. Mobile oil. There are two points that seem distinct to me. One, it was an express reference to the mineral lease here. Remarkably, under your theory, there's no reference at all to the mineral lease one and two. If I remember, that was sort of unusual saltwater disposal, which isn't naturally the oil extraction. That was something that wasn't considered by the mineral lease. Well, the saltwater disposal group you talked about in Coburn v. Parker, that was a separate contract. What was the surface lease restriction in mobile oil? In mobile oil? To bury the pipeline at least 12 inches below the surface and to remove any foundations and concrete foundations that were left on the property. After the lease terminated, it was a duty to restore the property to its original condition. That was a mobile case. And the surface owner gave up seven-eighths of his mineral rights to negotiate for that right. This court said that was enforceable. Well, the Keese gave up their house, the building mortgage. They allowed them to use the property for any purpose besides oil and gas. They actually gave them more property than they actually needed. It was reasonably necessary to produce the oil and gas. The Keese gave up a lot more than the owner did in the mobile oil operation case. Just to be clear, your theory is Petro has whatever rights they had under the mineral lease the day before the surface lease. They now have very different rights the day after the surface lease. They have all the rights that they have under the mineral lease, except they can't conduct their operations on the 4.3 acres of the Keese property. Their rights are different. They're different in that respect. And to achieve that change, you're relying on paragraph 8 that says that they use the term same or similar. I guess what I'm getting at is if you're looking for a departure from the status quo, you seem to be relying on language that reinforces the status quo. It's not an easy interpretation of this language. I thought it was pretty clear because when he talks about restoring the premises... It's not clear at all it's same or similar. Let's go back to what we had before. Same or similar, which is very different from different and less. Well, return the premises to a similar condition would be what it looked like it existed in 1988 when the lease was signed. That's how I interpret that. And the mineral lease is still in existence, and they can do all their operations except on the 4.3 acres at the Keese home. That's what they contracted for. That's the benefit of the bargain. Otherwise, you don't have the freedom of contract in this case. The district court... Does this mineral lessee, under your... Do they have any right to move those tanks or whatever they are, surface, to adjoining property that is also subject to their mineral lease? They do. They have the right to move that equipment on another 1,083 acres that they have under that unit. And it quickly... What if the owners of those surfaces say they don't? Well, those owners wouldn't have any choice. They haven't contracted away their rights like Coho did. Without a surface? Without a separate contract. That's right. You ought to also point out, too, that the statute of limitations in this case should have barred their claim. They filed a declaratory judgment action, but under the law, you look at the underlying cause of action that they had. What they had was a complaint to cancel or rescind the contract if they thought they had a right to do it. That ran out in 2013, three-year statute of limitations. They also state that Petro Laurel Holdings, in operating in a 30B6 deposition, they admitted the lease was enforced, that they were bound by it, that they agreed to fulfill conditions in the lease, and they didn't say except for paragraph 8. So their whole conduct in writing and in carrying out the terms of the contract is consistent with them acknowledging that that lease and that paragraph 8 is in full force and effect. So the statute of limitations is run, they should be stopped, and they waived and ratified any rights that they claim that they had to continue to use the 4.3 acres. And not one sign do they ever object, complain about paragraph 8, and that they were going to have to remove their equipment and restore the premises to its original condition. I looked up, you know, the Summers Treatise. It describes the Reynolds case as follows. It says that when the surface lease expires, the common law implied easements remain unaltered. That's its description of Reynolds. You would say that's an incorrect description. That's true if you don't have express language limiting the future use of that tract. Any theory on why section 8 doesn't even refer to the mineral lease, if your theory is that it's nullifying it? I have no idea. Unfortunately, I didn't draw that up. You have rebuttal time. Thank you. Police court. Bill Blair, I represent Petro Harvester Operating Company and Petro Harvester Laurel Holding Company. They are two separate LLCs, and Eric Patterson is co-counsel in this case as well. This case is a straightforward case involving the dominant mineral state and its reconciliation with a surface lease. We would submit to this court that that very issue has been decided in Mississippi in the Reynolds v. Denberry Owned Shore case. There are a few facts that I would like to address. First is there is a difference between the two defendants here. They are two LLCs, one of which is Laurel Holding Company, actually owns the oil and gas leases, the surface equipment, and whatever rights extended from the surface lease. Laurel Petro Harvester Operating Company is the designated operator, and it is a separate LLC, properly organized, that owns no interest in the field other than the right to operate, and it is the only party that can operate. It is authorized by the state of Mississippi and all of the owners in the field to conduct these operations. In this case, the oil and gas leases clearly predate the surface lease by some of them by 30 years. The surface lease, it's all in the Laurel oil field. The surface lease was taken in 1988, and it does have a definite requirement to pay a rental, and that rental was dutifully and honorably paid by every single owner. In this case, for whatever rights the Keefs gave up, they were paid over $850,000 by Petro Harvester. Are you defending the district court's decision that the parties cannot rearrange their rights at all, or do you have a more subtle argument? No, sir. My argument is this. We're not arguing that the surface lease did not exist. We're not arguing why it was brought into existence. What we're stating is that it did exist, and during the dependency of the surface lease, it coexisted with the dominant mineral state. We believe it actually granted additional rights, and that was the right to use the old 4 1⁄2 acres. After the surface lease terminated, the only lands we're using is about an acre and a half. We reduced the size of our footprint out there. But those rights did not terminate. The Keefs have argued that they're not seeking to supersede the mineral leases. But what they're saying is the dominant mineral state's gone, absolutely vanishes, as soon as that surface lease came into existence. That is not the law. The rental case is directly on point. They tried to distinguish the rental case by the fact that the operator was not the original lessee. The Mississippi Supreme Court addressed that issue in the rentals case, and they said that operator had the right to operate on behalf of everybody in the field, including the original lessee. The Mississippi Supreme Court also addressed the Colburn case out of Kansas that they used as a linchpin of their argument. And the Supreme Court said it doesn't apply for several reasons. First of which is the Colburn case did not involve in any respect the restriction of access to the dominant mineral state. It's not that case. I thought the first reason was the one they're relying on, which is that in the Colburn case, the operator was not binding a different underlying lessee. They were, right? No, sir. No, sir. If you, the case is very clear. First reason the Supreme Court says is this, that the Colburn case did not involve a concurrent lease from a mineral and surface owner that was the same person to an oil company. And the Colburn case, and it says as part of that reason, it did not involve the dominant mineral state in a right to use the property. It says that is the very first reason. Secondly, it also addresses the what I... I may be misunderstanding, but I thought his argument here is when Coho negotiates an 88 to surface lease, it's binding itself. They're one in the same. That is, that is what the keys are arguing. That is not what the Supreme Court said. The Supreme Court said in Colburn the surface owner was also the mineral owner at the same time it executed a concurrent lease with the mineral lessee. The exchange of rights flowed from the person who owned the dominant mineral state. They just, they own the surface as well. And the case did not involve the use of the surface. It involved the payment of money. And the Mississippi Supreme Court points that out, as did the Kansas court when it decided the case. That's very important because every single case he cited, every single one of them, there's not a single case that has ever considered this issue, not one, that has ever held that a subsequent surface lease terminates limits, reduces, supersedes the dominant mineral state. Not one. What about his reliance on paragraph 8? Your Honor, as we said, as I said earlier, we acknowledge that the surface lease existed. What the surface lease says is that you'll leave it in the same condition as when you found it. Okay? In so many words. That is paragraph 8. In paragraph 14, it also says that if any part of this lease is unenforceable, then the balance remains in effect. That would hold true for any of the provisions. And when, while they coexisted, Petro Harvester had the right to use the entire four, four and a half acres. When that surface lease terminated, it only had the right to use that part of the land that was necessary for its oil and gas operations. So our argument is not that the surface lease had no effect whatsoever, because we did. We paid an astronomical amount of rental for that. At the termination of the lease, we were paying $11,000 a month. We're not We were doing it because the contract required it. The surface lease itself required more royalties than the underlying mineral lease? Yes. Yes, it did. It did. Okay. I guess my concern is, obviously, companies want to, companies want to be encouraged to negotiate these surface leases. You're not saying that you disagree. But it isn't a heads-I-win, tails-you-lose. In other words, they get the loan amount restriction, you get the enhanced lawful use anywhere, but what he's saying is Section 8 was what they get after 30 years. The property is restored. I thought they meant to 80, the condition it was in in 88. And then your implied right to extract oil would resume. He's actually saying, no, it's over with completely. It's terminated. Would you agree to the more limited interpretation that you had a duty to take at least the six pumps off that were put on since? You don't agree with that? No, sir, I do not. That's because Reynolds makes any such interpretation of Section 8 just a nullity? No, it's not a nullity. We do have to return that part of the lease that's not covered by the dominant mineral estate. And that is the balance, which is about two-thirds of the four and a half acres. We have to give back. You could use, under this lease, you could use that property for anything, including storing warehousing material that had nothing to do with oil and gas business. It's just a commercial lease. But after that expired, you can't do that anymore. You're cut down to whatever the dominant mineral estate gives you. And I want to point out this, too. The Reynolds case was far stronger than this case. The Reynolds case had a provision in it, and I know I tried that case. I'm very familiar with it. The Reynolds case had a provision that said, at the termination of the lease, you will remove your equipment, your machinery, your pipes, your pumps, all of that. This one does not contain that language. And I'm not saying it would alter the outcome because I don't believe it does. Are you talking about the mineral lease or the surface lease? The surface lease in the Reynolds case was far broader and stronger in favor of the surface owner than this one is. And let's be clear about what we're talking about. We're talking about six wells that are underground, tubing, holes, cost millions of dollars to drill. We're not talking about picking pumps up and moving it next door. You're talking about plugging millions of dollars worth of wells that service the field. There are six of them on this acre and a half. Some of them are directional wells. Some of them are straight holes. But you just cannot pick them up and move them. And, Your Honor, you gave exactly the example I would give, and that is, if what he's saying is true, we had to move those wells, plug them, remove all equipment. The next day, after we turned it back to him under the dominant mineral state, we'd come right back and do it again, and that makes no sense whatsoever because the dominant mineral state was not terminated as a matter of law. Is this type of language in Paragraph 8 fairly common in various kinds of leases? Yes, Your Honor. I think it's very common in just almost every kind of surface use agreement, whether it's farming or oil and gas or anything else. Frankly, just like an apartment lease. It is. It's like anything. All it seems to me, all it means is I want the landowner, whoever's originally entering a lease with you all, they want the status quo preserved. Yes, sir. I would venture to say when that was executed, I don't know this, but I would venture to say when that was executed, no one had any envision that someone would argue that you're going to have to remove your wells because the dominant mineral state terminated when you signed a surface lease. And I believe that is the logic behind the Reynolds case, which this court cited with approval two years later in Barton Green v. Denberry on Shore to the fact that is the law in Mississippi. But that case was cited by this court for that proposition. I know I was down here and argued that one as well. We have one fact that's even more compelling in this case than the Reynolds case, and that is this. There are six compulsory units, and they each have a unit agreement. The unit agreements are identical or virtually identical. They cover different sections. One of them is called the consolidated, and it covers it all, basically all of the field. But every one of those agreements states that the operator, which is Petro Harvester Operating Company, has the right to use as much of the surface as is reasonably necessary to conduct its operations, which is much like the dominant mineral state itself. Now, those contracts were approved by orders issued by the state oil and gas board. The keys executed written ratifications of those agreements after the surface lease was entered. They have received payments for royalty in the field. They have tried to distinguish those facts by saying those agreements were vague and ambiguous. They're not vague. They say exactly what I just said. They say that you have a right to use the surface. It combines all of the tracks into one single lease as if there were no boundaries, and they ratified five of the six, and the sixth one is of no consequence. Can you save time to discuss the two cases he's principally relying on, mobile oil and the Kansas decision, what is it, Colburn? Yes, sir. Yes, sir. Yes, sir. I'd be glad to. All right, the mobile oil versus Brennan is a case out of Texas, and there's nothing unique about that. It is exactly what the Mississippi Supreme Court was talking about that distinguished the Colburn case. The same thing is the grant of the limitation of the surface came from whom? The mineral owner. The mineral owner who also owned the surface, when it granted the mineral rights over to the oil company expressly put in that that you will bury your pipelines below plow depth. It had the right to limit it. The mineral owner who made the grant had the right to limit it, and they did. Again, I may be oversimplifying. I thought Coho that negotiated the surface lease had the right to limit its own underlying mineral lease. But it did not expressly limit its mineral lease. It didn't limit the mineral grant. It executed the surface lease, and that's what the Supreme Court is distinguishing. The same premise applies in Colburn. It was the surface owner was also the mineral owner, and they executed those two agreements simultaneously virtually. I mean, they said the Supreme Court calls them concurrent. And that was not over access. That was over payment. And the Supreme Court considered Colburn when it handed down the Reynolds case and said it doesn't apply for those two reasons. So I do agree that a mineral owner, when it executes a lease, an oil and gas lease to an oil company, could say you can't operate on my property. I'm going to put that in the lease. But that is a limitation by the person who has the power to do it. It's not a grant by two third parties that aren't bringing in the person who owned the right. And in this case, the Keys ratified that right years after the surface lease by executing the ratifications. I mean, we have a much stronger case than the Reynolds case. He talked about waiver ratification. One of his arguments is we waive these provisions by honoring the contract and by paying the rentals, the monthly rentals. We're not saying the contract was unenforceable. We're not saying that. We're saying that an independent right existed that coexisted while the two were both in effect. And then when that surface lease terminated, we still had the right to be there under the dominant rental estate for the part of the land that was necessary for our exploration. There's been no allegation whatsoever, none, that we're using an unnecessary amount of land. There's no allegation that we've been imprudent in our operations. In fact, I believe it's been conceded that we haven't. So those equitable defenses such as estoppel don't apply. Those are when someone has really had bad conduct and has led somebody to believe something that's not true. I don't believe this court or anyone else can read that surface agreement and read the Reynolds case and believe that there was an intent to deceive anybody. It doesn't say one whit, not anything, about limited and dominant mineral estate. Not one word in there about it. What have you done in the record court pursuant to Section 8? What is a valid restriction on yourself? What is valid? We cannot use the rest of the surface lease. We have not done anything to it. We included in the record index or in our record excerpts a picture of the, I think it's our last one, a picture of the land. The land is traversed by a big ditch. It cuts the tracks into two separate, cuts the land into two tracks. We're using a small piece of the right track, and we've got pipelines that run down the exterior boundary of the left track, but we're not using the interior of that at all. It probably looks just like it did when we got it, except for the fact that we are mowing it and keeping the growth down. Other than that, and we've told the keys that they can have that land back. We're not using it today. It may be someday we need to use some small part of it for mineral exploration, but today we don't. That same fact existed in the Reynolds case. The original surface lease contained two and a half acres. When Amarato Hess was faced with Bill Reynolds' claim, they reduced the size of their footprint to one acre. That's all in the record. These same defenses that they've argued, the equitable ones, were also in the Reynolds case. The lower court discusses them in their opinion, which they've attached as part of their record excerpts. This idea of a statute of limitations barring us from claiming a lease that we don't have an obligation is just not true. We haven't argued the surface lease, that there's a breach of the surface lease. We're arguing the opposite, that there's not one. In Mississippi, statute of limitations on contracts is that it's three years from the date the cause of action approves. The cause of action validates approves when we didn't remove our equipment, and that did not happen in 2018. The lower court made short shift of that. Unless Your Honor has any more questions, I don't think I have anything else to expand on. Thank you. Your Honor, I'd like to touch on the point that may give you a little heartburn, and that's on the interpretation of this Paragraph 8. It's a fact. There's been no dispute as to the meaning of Paragraph 8. They admit what the meaning is, move your equipment off our property. The record in the trial court was never developed as to the interpretation of Paragraph 8. It's always been move your equipment off the property, put the property back where it was before the commencement of the lease. That's not even an issue in the case. They don't dispute it. So I don't think that is really the controlling point here. He makes a big point about Reynolds. This case is stronger than Reynolds. Nothing will be further from the truth on that. All you've got to do is read the trial court judgment and read the Supreme Court case and look at why they denied the Reynolds lease. Clearly, the mineral lessee did not sign. In fact, Exxon was the mineral lessee. They weren't even a party to the case. Now, we all know you can't take away a property interest from a company or a person if they haven't been given due process of law. Exxon wasn't even in the case. Look at the case. It's not stronger. What they're trying to say is the language about removing equipment may be stronger. But the first two factors, the mineral lessee didn't sign and there was no consideration given by the Reynolds. That's the reason the case fails. The district court's finding really basically elevates a mineral lessee to a status where they can take rights from the service owner. It's like you asked. They don't have to give up anything. They can take all these rights from the keys, but they don't have to follow through and keep their word on all the terms of the contract that they agreed to do, which is at the end of the lease term, move your equipment. Then you don't have the ability to contract with an oil company or with any mineral lessee. I think that's hyperbolic. You could have written a much better, much clearer provision. Nobody's saying you can't effectuate this concept. I think the concern is that you haven't done this in this language. Well, that wasn't litigated in the lower court because there was no dispute about that language means you move your equipment off our property. There was no dispute about that. Hadn't been until you brought it up this morning or this afternoon. That wasn't developed in the lower court. If you're saying that that term is ambiguous, then that's got to be litigated. That's got to be determined. This argument has always been this is an enforceable contract. It's just what it doesn't extend to is nullifying the dominant estate and that Reynolds creates that truth. It doesn't, except as to this 4.3 acres. It limits they can't use that 4.3 acres. They can use all this other property out here. They still got their mineral lease. They still have the right to go on the surface of everybody else, but not the 4.3. That was explicit in the agreement. It's been there for 30 years. They're wrong about the stash limitations. When you have knowledge of a provision in a contract under the city mortgage, the Washington case we cited in our brief, you have three years from the date you have knowledge of the terms and the conditions to bring a suit to cancel it or to rescind it. They didn't do that. They went right along. Every operator, every mineral estate has gone for 30 years, and they've acknowledged that term right there, that provision 8, and they didn't cancel it. Your familiarity with this case, is there any reason to disagree with his statement that virtually every surface lease relating to this 1,000-acre oil field has the same return of premises to conditions? I disagree with that 100 percent, Your Honor. That is so speculative. A contract is a negotiated instrument. They want to throw all surface leases. That's what the district court did. It just said a surface lease can't limit a mineral estate's rights. Well, you can call it a Mickey Mouse contract. The label means nothing. It's the terms of the contract that control. All of these are negotiated with the surface owner. Just look at the cases that were cited. Most of those cases didn't have express language limiting the restoration of the property. What's your best case for not just limiting, say, okay, we'll pay you for crop damage, or if we have to build a pipe instead of your barn, we'll do this. Where do you have a case that the surface lease actually ends the mineral lease, and yet it doesn't refer to it? Well, we're not saying that it's ending the mineral lease. Well, I know you keep saying it doesn't end it. That's to other people. But I'm asking you, I don't see why that's a relevant argument. Let's imagine the oil field were just under the four acres. Your argument would be there's no ability to extract oil now. You negotiated away unwilling, unwitting. No, no, no, no. They have every right in the world to extract the minerals under the Keys 4.3 acres. They just can't do it on top of the 4.3. They can go next door and directionally drill. They do that miles away. We all know that. They directionally drill. So, no, it has nothing to do with the minerals below the Keys 4.3. It has to do with the surface of the Keys. We have the argument. Thank you very much. Thank you, Your Honor.